ROY *v.* BORDAS.

1. FRAUD—CONSPIRACY—CORPORATIONS—PROMOTERS.

   The issuance of stock in a corporation organized for the manufacture of medicine to a subscriber, who pays cash upon the false representations of one of the promoters and directors that he had put in $50,000, and other directors had each put in $4,000, accompanied by like false statements in the articles of incorporation signed by the other promoters, and by concealment of the true facts, and misrepresentations to the public, presents a question of fact as to the fraudulent intent of the directors and the existence of a conspiracy between them to defraud plaintiff.

2. SAME.

   If a material representation, known to be false, is intelligently made in such a matter, a fraudulent intent is inferable.

3. APPEAL AND ERROR—DIRECTING VERDICT—QUESTIONS OF LAW AND FACT.

   In determining on error whether the trial court rightly directed a verdict for defendant, it is necessary to consider the testimony from the point of view most favorable to the plaintiff.

Error to Houghton; Streeter, J. Submitted April 14, 1910. (Docket No. 17.) Decided June 6, 1910.

Case by Sophie Roy against Edward P. Bordas and others for fraud. A judgment for defendants on a verdict directed by the court is reviewed by plaintiff on writ of error. Reversed.

*Joseph F. Hambitzer*, for appellant.

*Allen F. Rees*, for appellees.

OSTRANDER, J. The declaration is inartificial, but was not demurred to, and counsel seem agreed that it will support a judgment for plaintiff. The court, upon the testimony introduced by the plaintiff, directed a verdict for the defendants, an exception was taken, and error is assigned upon such ruling and direction. This we learn, not from the brief for appellant, which contains no statement of facts, no reference to any exception or assignment of error, but from the record itself and from the brief for appellees.

It is said in the brief for the appellant:

" The plaintiff stands or falls upon the proposition that the defendants conspired to defraud the public, and especially the plaintiff, by dissipating one-half of the capital stock in a company promoted by the defendants to manufacture a worthless compound of unproven worth or virtue and concealing the fact from the knowledge of purchasers of the remaining stock. Was there any evidence from which the jury could legally and logically find that these allegations were true ? "

In view of this statement, and the facts recited above, we have, without feeling bound to do so, examined the record to see if the testimony tends to prove the existence of a conspiracy to defraud. There was testimony tending to prove that defendants, before and after the filing of articles of association, promoted a company to manufacture and sell " various medicinal preparations in liquid and other forms." The capital was $100,000, with 10,000 shares, and the articles of association, executed by six persons, of whom defendants are five, represented that

the amount of capital actually subscribed and paid in in cash was $50,500 and that the shares were held—by Bordas 5,000 and by each of the others 10. In fact, these shares had not been sold for cash, or, if any had been so sold, not more than $500 had been paid for them. In fact, the understanding of the promoters was that for a formula, a copyright, and patents granted in England and Canada, 5,000 shares were to be given to defendant Bordas. A check of the company for $50,000, not drawn against funds, was formally delivered to defendant Bordas and by him surrendered to the company. He assigned 400 shares of stock to each of his co-promoters, so that when the public was admitted to purchase stock the holdings were 3,000 shares by Bordas and 410 by each of the others. It does not appear that either of the promoters sold or offered to sell his shares or any of them. Shares were sold by the company, and plaintiff purchased and paid par for 100 shares. The money paid for shares sold to the public was received by and disbursed for the company. The business was not successful.

Plaintiff offered to return her shares, and now brings suit for the purchase price of them upon the ground that she was defrauded. In buying her stock, plaintiff did not rely at all upon the representations made in the articles of association and knew nothing about them. She claims to have placed reliance upon, and to have been induced to purchase shares by, the representations made to her by defendant Bordas and to have discovered the falsity of the statements contained in the articles of association, and of those made by Bordas, shortly before she offered to return her shares. There is testimony tending to prove that defendant Bordas represented to her that he had put $50,000 into the business and the other directors had each put in $4,000. There is testimony tending to prove that some of the defendants—the promoters of the company—stated to others that they were largely interested in the concern. Some or all of them were directors of the company. A local newspaper published by one of them an-

nounced the organization of the company and published a list of shareholders as shown by the articles. None of them made public the fact that there had been an allotment of shares or that one-half the stock had been given for the formula, etc., etc., and only a few hundred dollars had been paid for in cash. The incorporators were prominent, and apparently successful business men. There is no testimony tending to prove that they regarded the medicine they proposed to manufacture as worthless, or that they doubted its value or the ultimate value of the shares.

If there was a conspiracy—a common design—it was to promote public buying of shares and to see to it that the cost of the experiment, and of its ultimate failure, should be borne by others while securing for themselves a considerable proportion of any profits which might be made. If the existence of such a common design is material, it is, upon this record, a question of fact and not of law whether there was such a design. It must be admitted that the statements in the articles of association with respect to the paid-up capital are calculated to induce the buying of shares, that all of the defendants subscribed the articles, and that the representations were false. The alleged statements of defendants Bordas and Orr are, in substance and effect, repetitions of those made in the articles of association. The case made for the plaintiff is not the one of a misrepresentation in a prospectus addressed by promoters to prospective subscribers for shares, nor the one of a mere omission or nondisclosure of facts. She asserts and has proven false representations solemnly made in the articles of association by all of the defendants, and has produced testimony tending to prove the making of the same representations by one of the defendants to herself and by one or more of the other defendants to other persons. It cannot be reasonably contended that the representations were of and concerning immaterial facts. Were they fraudulently made? One does not, ordinarily, allege as truth that which is known to be

false. If a material representation, known to be false, is intelligently made in a matter such as we are considering, a fraudulent intent may be inferred. Clearly, the question is one to be answered by the jury.

We have, as we were bound to do, stated the tendency of the testimony most favorable to plaintiff, and from the point of view thus obtained have considered whether the court below rightly directed a verdict for defendants. We do not consider any other question. We are of opinion that the case is one for the jury.

The judgment is reversed, and a new trial is granted.

HOOKER, MOORE, MCALVAY, and BROOKE, JJ., concurred.